UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | CRIMINAL NO. 16-10055-DJC |
| v. | ) ) |  |
| DEBORAH OSGOOD, | ) ) |  |
| Defendant | ) |  |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States concurs with the Probation Department that the applicable Sentencing Guidelines level in this case is 15, as set forth in the Presentence Report ("PSR"). Based on the defendant's criminal history category of I, the guidelines sentencing range is 18 to 24 months. For the reasons set forth below, the government respectfully submits that a sentence of incarceration for a period of one day, followed by a one-year term of supervised release that includes a condition of six months home confinement and a condition requiring restitution payments on a Court-imposed schedule, is appropriate in this case.

1. The Nature and Circumstances of the Offense

Tax fraud is a serious crime. For a period of at least four years, the defendant, the owner of a successful residential and commercial cleaning service, engaged in a multi-pronged scheme to underreport her income, and thereby to avoid applicable taxes. The defendant's crime, while not complex, was somewhat more involved than the run-of-the-mill tax avoidance schemes that are themselves all too common. For years, she instructed certain clients to make checks payable to her personally, rather than to her business. She took those checks to the bank and cashed them, but did not deposit the proceeds to her business bank account. In 2009 alone, she cashed some 1,433 checks made out to her personally, failed to deposit the proceeds into her business

bank account, and failed to disclose more than $177,000 in income to her tax accountant. Over the at least four years during which the defendant engaged in the scheme, she cashed many thousands of checks in this way, amounting to well over $1 million in income. She failed to disclose this income to her accountant, and—year after year—she signed tax returns under penalty of perjury, knowing them to be false. She thus underpaid her income taxes by at least $301,785.96.

The unambiguous goal of the defendant's efforts was to avoid paying taxes she knew she owed. Her actions in furtherance of that effort were deliberate and repeated thousands of times over a period of years. The unreported income and the resulting tax loss were significant.

2.   The Defendant's History and Characteristics

The defendant has no prior criminal record. She is a well-educated individual with a supportive family, who was raised in comfortable surroundings. She appears to be hard-working and entrepreneurial, having built, over the course of a decade, a business with eight employees and significant revenues.[1] Together with her spouse, she has a six-figure income. While these facts suggest, on the one hand, that the defendant's actions were inconsistent with a generally law-abiding life, they also underscore the fact that she knew better, and that her decision to engage in fraud was a considered one. Indeed, while her tax avoidance efforts were somewhat more concerted and elaborate than most, she was, in some sense, the classic tax avoider: someone who dealt in cash, and didn't report her income, simply because she thought she could get away with it.

At the same time, the defendant's actions since the time her fraud was discovered are noteworthy. The defendant's acceptance of responsibility was unusually prompt and full,

---

[1] Among other things, the government's recommendation reflects its consideration of the likely collateral consequences a lengthy period of incarceration would have on the defendant's business and its employees.

requiring minimal expenditure of government investigative and prosecutorial resources. She is making a considerable up-front restitution payment of nearly half her six-figure tax debt, and is doing so with the support of her parents, by taking a home equity loan on their residence.

In addition, the defendant's personal circumstances, set forth in her own sentencing memorandum and the letters submitted from multiple medical professionals who care for the defendant and members of her family, merit consideration. Of particular note is the fact that the defendant is the primary caregiver for her ailing parents who, notwithstanding the fact that they continue to live independently, have serious medical conditions that require ongoing care. The government's sentencing recommendation reflects its assessment that the defendant's particular family circumstance, and her role in providing needed support to members of her immediate and extended family, merit a variance from the applicable Sentencing Guidelines.

3. The Need for Just Punishment, Adequate Deterrence
   And the Avoidance of Unwarranted Sentencing Disparities

The law is clear that the Court must give "respectful consideration" to the Guidelines in fashioning an appropriate sentence, and that the Guidelines are the starting point for imposing sentence. United States v. Velez-Soto, 804 F.3d 75, 78 (1st Cir. 2015), cert. denied, 136 S. Ct. 912, 193 L. Ed. 2d 803 (2016). The defendant's contention that many cases of tax fraud result in sentences involving no term of incarceration (Def. Br. at 7), provides no information about the factors that drove those sentences, and thus no information about why a sentence of imprisonment in this case would reflect an unwarranted disparity relative to similarly situated defendants. See, e.g., United States v. Willingham, 497 F.3d 541, 544 (5th Cir. 2007) ("National averages of sentences that provide no details underlying the sentences are unreliable to determine unwarranted disparity because they do not reflect the enhancements or adjustments for the aggravating or mitigating factors that distinguish individual cases."). Moreover, even if taken

3

into account, the defendant's argument concerning national sentencing statistics underscores the reasonableness of a sentence that includes some period of incarceration and some meaningful restrictions on the defendant's liberty, insofar as the data suggests that half of all defendants who commit tax fraud on a scale comparable to the defendant's fraud <u>do</u> serve time in prison.

Indeed, the instant case represents a relatively straightforward example of a defendant who lost her moral compass – who committed tax fraud not because she faced unusual financial struggles, not because she suffered under the enduring legacy of some challenging upbringing, and not because she lacked the ability to appreciate the wrongfulness of her actions, but rather for the most mundane of reasons:  because she thought she could.  Countless individuals are situated similarly to this defendant.  They could lie on their tax returns, and if they were to do so, many would probably get away with it.  Those who resist that temptation do so either because of their innate sense of morality and civic duty—because they understand that lying on tax returns is simply wrong—or because they know that if they are caught, the consequences will be severe. Absent such consequences, there is little save good intentions that will deter hard-to-detect criminal conduct like that committed by this defendant.   Principles of general deterrence and just punishment thus weigh in favor of a sentence that includes some period of incarceration, and the loss of liberty.

   4. <u>Conclusion</u>

The defendant effectively stole $300,000 from the government, over a period of years.  In that sense, there is little, if anything, that distinguishes this case from the heartland of cases contemplated by the Sentencing Guidelines.  At the same time, the defendant's compelling family circumstances, her unusually prompt and complete acceptance of responsibility, her significant efforts at restitution prior to sentencing, and the collateral consequences a lengthy

term of incarceration would likely have on multiple individuals in the defendant's employ, do counsel in favor of a downward variance. Accordingly, the United States submits that a sentence of incarceration for a period of one day, followed by one year of supervised release with a condition of six months' home confinement and a condition requiring continued restitution payments on a Court-imposed schedule, is sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, and provide adequate deterrence and just punishment.

Dated:  June 22, 2016

>Respectfully submitted,
>
>CARMEN M. ORTIZ
>United States Attorney
>
>By: */s/ Stephen E. Frank*
>STEPHEN E. FRANK
>Assistant U.S. Attorney
>1 Courthouse Way, Suite 9200
>Boston, MA 02210
>(617) 748-3244

CERTIFICATE OF SERVICE

     I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on this date.

Dated:  June 22, 2016

>*/s/ Stephen E. Frank*
>STEPHEN E. FRANK